IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BULL MOUNTAIN SANITATION, LLC., <br><br> Plaintiff, <br><br> vs. <br><br> ALLIED WASTE SERVICES OF NORTH AMERICA, L.L.C., *et al*, <br><br> Defendants. | CV 18-147-BLG-SPW-TJC <br><br> **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Bull Mountain Sanitation ("Bull Mountain") brings this action against Allied Waste Services of North America, LLC ("Republic") and Bayside Disposal, Inc. ("Bayside") (collectively, "Defendants"), alleging tortious interference with contract and abuse of process. (Doc. 9 at 5-7.)

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 41.) The matter is fully briefed and ripe for review. (*See* Docs. 42, 47, 49.) For the reasons discussed below, the Court recommends Defendants' motion be GRANTED.

/ / /

## I.     Factual Background[1]

Motor carriers in the state of Montana are subject to the supervision and regulation of the Montana Public Service Commission ("PSC"). Mont. Code Ann. § 69-12-201(1)(a). "Class D" motor carriers include motor carriers engaged in the transportation of garbage. Mont. Code Ann. § 69-12-301(5). Subject to certain exemptions, solid waste haulers must be granted a Class D certificate of public convenience and necessity from the PSC before it may transport garbage in a designated area of the state. Republic and Bayside each possessed a Class D certificate to haul solid waste in Musselshell County, and had been operating in the county for over 25 years. (Doc. 48 at ¶ 3, 70.)

Bull Mountain started its solid waste hauling business in Musselshell County in March 2013. (*Id.* at ¶ 1.) Bull Mountain did not have a Class D certificate, but it was apparently under the impression its operation fell within an exemption provided by Mont. Code Ann. § 69-12-102(1)(c), for carriers servicing towns of less than 500 persons. (*Id.* at ¶ 2.) Republic and Bayside became aware of Bull Mountain operating in Musselshell County. (*Id.* at ¶¶ 4-5) Republic's lawyer then issued a cease and desist letter to Bull Mountain on August 8, 2014, stating that Bull Mountain did not have a Class D certificate and did not fall within § 69-12-

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motion for summary judgment; are taken from the parties' submissions; and are undisputed unless otherwise indicated.

102's exemption.  (Docs.  43-4 at 1; 48 at ¶ 6.)  Republic noted that only the town of Melstone qualified under the exemption, but it was "informed that Bull Mountain is operating well beyond the scope of the … exemption."  (Doc. 43-4 at 1.)  Republic thus demanded "Bull Mountain cease all garbage hauling in Musselshell County for residential customers outside … Melstone."  (*Id.* at 2; Doc. 48 at ¶ 7.)  Republic also requested Bull Mountain acknowledge its intention to cease operations "so that Republic and Bull Mountain might work together to ensure a seamless transition for customers who may wish to retain garbage hauling services from an authorized Class D hauler …."  (Docs. 43-4 at 2; 48 at ¶ 8.)  In the event Bull Mountain failed to cease operations, Republic advised it would "be forced to exercise its administrative and/or judicial remedies …."  (Doc. 43-4 at 2.)

Bull Mountain did not cease operations, and instead petitioned the Montana PSC on September 22, 2014 for a declaratory ruling to clarify the applicability of § 69-12-102's exemption.  (Docs. 43-6; 48 at ¶ 9.)  Republic, Montana Solid Waste Contractors Association, and a host of other interested parties, opposed the petition.  (Doc. 43-7 at ¶ 2.)

Republic also filed a complaint for injunctive relief against Bull Mountain in Montana's Fourteenth Judicial District Court for Musselshell County on September 26, 2014.  (Docs. 43-5; 48 at ¶ 10.)  Republic sought to enjoin Bull Mountain from

3

operating in Musselshell County without a Class D certificate. (Docs. 43-5 at 4; 48 at ¶ 11.)

The PSC ruled on Bull Mountain's petition on December 9, 2014, finding that § 69-12-102's exemption did not apply to Bull Mountain, except for its service to the town of Melstone. (Docs. 43-7 at ¶ 8; 48 at ¶ 13.) Bull Mountain then ceased operations and applied for a Class D certificate. (Docs. 43-8; 48 at ¶¶ 14-15.) Bull Mountain's operations remained closed during the pendency of the application until May 12, 2015, when PSC issued a Class D certificate to Bull Mountain. (Docs. 43-10; 48 at ¶¶ 15, 18-19.)

Less than a month later, on June 9, 2015, Republic and Bayside filed a petition for judicial review of the issuance of Bull Mountain's Class D certificate under the Montana Administrative Procedure Act ("MAPA"), Mont. Code Ann. § 2-4-702. (Docs. 43-11; 48 at ¶¶ 21-22.) Republic and Bayside questioned whether the PSC erred in awarding Bull Mountain the certificate. (*Id.*) PSC was the named-Respondent, but Bull Mountain chose to intervene. (Docs. 43-11; 48 at ¶ 23.) Bull Mountain did not file briefing in the matter, instead relying on the PSC's submissions. (Doc. 48 at ¶¶ 24-25.) The court ultimately issued an order denying Republic and Bayside's petition for judicial review on August 15, 2018. (*Id.* at ¶ 28.) Bull Mountain continued to operate during the pendency of the three-plus year action. (*Cf.* Docs. 48 at ¶¶ 30, 36 and 48-4 at ¶ 19.)

Bull Mountain filed the instant action on September 6, 2018, alleging Defendants' actions caused a loss of business and inhibited the growth of business. (*See* Doc. 9.) Specifically, Bull Mountain alleged claims for tortious interference with contract (Counts 1 and 4); abuse of process (Counts 2 and 5), and malicious prosecution (Counts 3 and 6). The Court previously granted Defendants' motion for judgment on the pleadings as to Bull Mountain's malicious prosecution claims. (Doc. 24.) Defendants now move the Court for summary judgment as to all remaining claims in the complaint. (Doc. 41.)

## II.     Standard of Review

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

5

demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. Discussion

Defendants advance two primary arguments in support of their motion for summary judgment. First, Defendants argue that their filing of two legal challenges in Montana district courts were not an abuse of process because they pursued valid legal claims. (Doc. 42 at 14.) Second, Defendants assert that Bull Mountain's allegations do not support a claim for tortious interference of contract because Defendants' actions were lawful and caused no damages. (*Id.* at 20-21.)

The Court will address each argument in turn.

### A. Abuse of Process Claims

To support a claim of abuse of process under Montana law, the plaintiff must establish two essential elements: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984); *DuBray Land Servs., Inc. v. Schroder Ventures US*, 2006 WL 8435793, at *1 (D. Mont. 2006), *report and recommendation adopted*, 2006 WL 8435794 (D. Mont. 2006). In resisting a motion for summary judgment, the Montana Supreme Court has required that a plaintiff "must raise a genuine issue of material fact on each element." *Seipel v. Olympic Coast Invs.*, 188 P.3d 1027, 1031 (Mont. 2008).

Defendants argue that they pursued legitimate and valid claims to compel the exact legal result pursued in their pleadings for injunctive relief and judicial review. (Docs. 42 at 14; 49 at 6, 7.) Defendants also assert that there was no ulterior motive to coerce Bull Mountain out of business, and they did not "steal Bull Mountain's customers." (Doc. 42 at 14.)

Bull Mountain contends that the Defendants' judicial actions were invalid, and "the filing of a baseless claim alone may be sufficient if it is accompanied by an improper purpose." (Doc. 47 at 8.) Bull Mountain maintains that there is evidence of an improper purpose here, because "Defendants were trying to acquire Bull Mountain's customer list and keep it out of business." (*Id.* at 9.)

Bull Mountain relies heavily on the Montana Supreme Court's decision in *Seipel* to support its argument. In *Seipel*, there was evidence presented that the defendant knew it had no valid claim against the plaintiff in an underlying lawsuit, but filed the action nonetheless. *Seipel* 188 P.3d at 1032. The Montana Supreme Court said that "[u]se of the court system to file a baseless legal claim may constitute an abuse of process." *Id.* The Court found that the ulterior motive requirement would be satisfied by attempting to extract money in the underlying lawsuit which was not owed. *Id.* The second element of abuse of process would also be satisfied by knowingly filing a lawsuit without a valid claim. *Id.*

This case is markedly different from *Seipel*. There are no facts presented which would warrant the inference that Defendants knowingly filed invalid claims; the undisputed facts show the opposite. It is undisputed that Bull Mountain was operating in Musselshell County without a Class D certificate. (Doc. 48 at ¶ 2.) Republic and Bayside possessed the only Class D certificates in Musselshell County when Bull Mountain commenced operations. (*Id.* at ¶ 3.) Republic thus filed suit under Mont. Code Ann. § 69-12-209, which provides for a private right of action by an injured party to enforce the provisions of the motor carrier statutes. (Doc. 43-5 at ¶¶ 1, 5.) As a Class D carrier in Musselshell County, Republic had standing under § 69-12-209(2) to protect its interest and enforce its claim that Bull Mountain was operating in contravention of the law. Republic's position in the action was also consistent with the PSC's ultimate determination, which found that the bulk of Bull Mountain's operation required a Class D certification. (Docs 43-7; 48 at ¶ 13.) Therefore, Republic's suit in Montana's Fourteenth Judicial District Court for Musselshell County was a legitimate use of process to hold Bull Mountain accountable under Montana law governing solid waste haulers. (*See* Docs. 43-5; 48-2 at 2-3.)

Defendants' joint judicial review action was likewise a legitimate claim, albeit unsuccessful. Bull Mountain applied for and received a Class D certificate from the PSC, authorizing its operations in Musselshell County. (Doc. 48 at ¶¶ 14,

9

19-20; *see also* Docs. 43-8; 43-10.)  The Montana Administrative Procedure Act provides for judicial review of agency decisions after the exhaustion of administrative remedies.  Mont. Code Ann. § 2-4-702.  After exhausting administrative remedies, Defendants challenged the PSC's determination and filed a petition for judicial review under MAPA in Montana's First Judicial District Court in Lewis and Clark County.  (Docs. 43-11; 48 at ¶¶ 21-22.)  The PSC was the named defendant.  (Doc. 43-11.)  Bull Mountain chose to intervene, although it did not participate in briefing.  (Doc. 48 at ¶¶ 23-25.)  Defendants challenged the PSC's conclusion on several grounds, including whether there was an unmet need for Bull Mountain's services in Musselshell County; whether Bull Mountain was fit, willing and able to provide the services; and whether existing carriers would satisfy the need for additional services.  (*Id.* at ¶¶ 31-33.)  The court ultimately found in favor of the PSC, denying Defendants' petition.  (Doc. 43-13.)

While Defendants' action for judicial review was not successful, it was a legitimate use of the judicial review process.  After reviewing the parties' briefing, the Montana district court concluded "that in essence what Petitioners ask this Court to do is re-weigh the evidence presented to the Commission and based on this re-weighing, come to different conclusions."  (*Id.* at 5.)  The court noted that it could "not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," and ultimately found that there was "substantial

10

evidence to support the Commission's findings and the Commission's conclusions of law are correct." (Docs. 43-13 at 5, 9; 48 at ¶ 28.) Thus, the PSC's determination was affirmed under MAPA's deferential standard of review. Nevertheless, there are no facts presented which create an inference that the action was void of merit or was not a valid exercise of the Defendants' remedies under MAPA, much less that Defendants had knowledge that their claim lacked validity.

In addition, there are no facts to infer that Defendants had an ulterior motive in pursuing their claims. There is nothing to indicate Defendants' purpose in bringing those actions was anything other than the actual relief sought in each action. In the initial injunctive relief action, Bull Mountain sought to stop Bull Mountain from unlawfully hauling solid waste in Musselshell County without the required certification. In the subsequent judicial review proceeding, Defendants sought the very remedy they requested in their pleadings – a reversal of the PSC's decision granting the Class D certification.

Bull Mountain's suggestion that Defendants' ulterior motive in bringing the actions was to take its customer base is unconvincing. Bull Mountain proffers Terry Jorgenson's affidavit, which states that in March 2014 a Republic employee objected to Bull Mountain's dumping at a Musselshell County transfer station and demanded a customer list. (Doc. 48-4 at ¶¶ 4-6.) Bull Mountain also points to the August 2014 letter from Republic's attorney in which Republic advised it would

11

"work with Bull Mountain to ensure a seamless transition for customers." (Doc. 43-4 at 2.) But the undisputed facts show that, after Republic filed its complaint for injunctive relief in September 2014, Defendants made no effort to acquire Bull Mountain's customer list or its customers. To the contrary, the undisputed facts establish that Defendants did not pursue growth in Musselshell County; they have not increased advertising efforts in Musselshell County; and they have not experienced a significant gain in customers in Musselshell County. (Doc. 48 at ¶¶ 38-40.) In fact, Bull Mountain emphasizes that "Defendants have not increased the number of customers they service in Musselshell County since March 2015 and have not done anything to increase the number of customers served since the PSC hearing in March 2015. (*Id.* at ¶ 86.) Additionally, it appears that when Bull Mountain ceased operations for approximately five months in 2015, while its application for a Class D certification was pending, it only lost "a couple of customers due to the customers moving, and potentially one client who switched solid-waste hauling providers." (*Id.* at ¶ 37.) This evidence fails to raise a genuine issue of material fact regarding the ulterior motive element.

Therefore, the Court finds no genuine issue of material fact exists as to either element of Bull Mountain's abuse of process claim. Bull Mountain has not presented any facts to establish an inference of either an ulterior purpose or a willful act in the use of the process not proper in the regular conduct of the

proceeding. The Court recommends Defendants' motion for summary judgment be granted as to Bull Mountain's abuse of process claims.

### B. Tortious Interference with Contract Claims

Plaintiff also asserts claims for tortious interference with contract. Tortious interference with contract involves four elements: "the defendant's acts (1) were intentional and willful, (2) were calculated to cause damage to the plaintiff in his or her business, (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and (4) that actual damages and loss resulted." *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, 2006 WL 6843711, at *3 (D. Mont. 2006); *Bolz v. Myers*, 651 P.2d 606 (1982). These elements are identical to the requirements for intentional interference with prospective economic advantage. *Wingfield v. Department of Public Health and Human Services*, 463 P{.3d 452, 454 (Mont. 2020). But the distinguishing characteristic of a tortious interference with contract claim is the existence of a contract. *Id.* ("'The key difference between the two tort theories is that' intentional interference with prospective economic advantage 'does not require that a contract exist between any of the involved parties.'") Bull Mountain contends that Defendants "unlawfully interfered with Bull Mountain's ability to meet its contractual obligations to its clients." (Doc. 9 at ¶¶ 54, 37.)

13

Defendants argue that their actions were lawful, justifiable and proper, did not result in damages to Bull Mountain's business, and were not malicious or calculated to damage Bull Mountain's business. (Doc. 42 at 21-29.) Defendants also assert that Bull Mountain never had contracts with its customers. (Doc. 49 at 9-10.)

Bull Mountain argues that Defendants interfered with Bull Mountain's contractual relationships when Defendants objected to Bull Mountain's application for a Class D certification, filed a petition for judicial review of PSC's decision to issue a certificate, and attempted to obtain Bull Mountain's customers. (Doc. 47 at 13, 15.)

The only potential contracts in this case are any contracts which existed between Bull Mountain and its customers. But the undisputed facts show that Bull Mountain had only informal agreements with its customers. Bull Mountain had no written contracts with its customers; Bull Mountains' customers were free to terminate its services at any time; Bull Mountain was similarly free to cancel its service to the customer at any time; and Bull Mountain's customers did not pay in advance for the services provided. (Doc. 48 at ¶¶ 50-54.) In short, Bull Mountain's customer agreements consisted of informal agreements to pay for services previously rendered.

Nevertheless, to the extent Bull Mountain had enforceable oral contracts with its customers, the Court finds that Bull Mountain fails to raise a genuine issue of material fact as to its tortious inference of contract claims. First, Bull Mountain has not presented facts to show that either action brought by Defendants in Montana district court were for an unlawful purpose or without right or justifiable cause. As previously discussed, both of Defendants' actions involved legally valid claims. Moreover, other than filing the two district court actions, Defendants did not take any other action to interfere with Bull Mountain's contractual relationships with its customers. As discussed, the undisputed facts establish that after filing the first action for injunctive relief, Defendants did not take any action to acquire Bull Mountain's customers.

In addition, the undisputed facts do not show that Defendants' actions caused Bull Mountain damages under its customer contracts. Bull Mountain continued to operate after Republic sent a cease and desist letter. (Doc. 48 at ¶ 9.) It did not pause its operation until the PSC denied its request for an exemption. (*Id.* at ¶ 13.) After it acquired the necessary certification, Bull Mountain resumed servicing its customers and continued to do so throughout the time the judicial review action was pending. (*Id.* at ¶ 15, 19-20, 30, 35-36.) Therefore, the inability to service its customers for a five-month period in 2015 was the result of its own failure to obtain the necessary certification, not because of the actions of

15

Defendants. Bull Mountain otherwise remained free to provide services to its customers.

Bull Mountain also suggests that it would have expanded its business but chose not to do so while the actions were pending. (Docs. 47 at 14; 48 at ¶¶ 45-46.) But Bull Mountain has asserted a tortious interference with contract claim. Defendants could not have interfered with contracts that did not exist.

Therefore, the Court finds that no genuine issues of material fact exist as to Bull Mountain's tortious interference of contract claims and recommends that Defendants' motion for summary judgment be granted.

## IV. Conclusion

In sum, the Court finds that Bull Mountain fails to raise genuine issues of material fact as to Counts 1, 2, 4, and 5 of its complaint, which allege tortious interference with contract and abuse of process. Therefore,

**IT IS RECOMMENDED** that Defendants' motion for summary judgment (Doc. 41) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.  D. Mont. Local Rule 72.3.

**IT IS ORDERED**.

DATED this 17th day of July, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge