IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BULL MOUNTAIN SANITATION, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIED WASTE SERVICES OF NORTH AMERICA, L.L.C., *et al.*,<br><br>Defendants. | CV 18-147-BLG-SPW<br><br>ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATIONS |

Before the Court are Magistrate Judge Cavan's Findings and Recommendations, filed July 17, 2020. (Doc. 64). Judge Cavan recommended that Defendants' motion for summary judgment be granted. (Doc. 64 at 1). Plaintiff timely filed objections to this recommendation. (Doc. 65). Defendants submitted a response to the objections. (Doc. 66). For the following reasons, the Court adopts Judge Cavan's Findings and Recommendations in full.

I. **BACKGROUND**

No party objected to Judge Cavan's recitation of the relevant factual background. As such, the Court adopts Judge Cavan's factual findings and repeats them here for convenience.

1

Motor carriers in the state of Montana are subject to the supervision and regulation of the Montana Public Service Commission ("PSC"). Mont. Code Ann. § 69-12-201(1)(a). "Class D" motor carriers include motor carriers engaged in the transportation of garbage. Mont. Code Ann. § 69-12-301(5). Subject to certain exemptions, solid waste haulers must be granted a Class D certificate of public convenience and necessity from the PSC before it may transport garbage in a designated area of the state. Republic and Bayside each possessed a Class D certificate to haul solid waste in Musselshell County, and had been operating in the county for over 25 years. (Doc. 48 at ¶ 3, 70).

Bull Mountain started its solid waste hauling business in Musselshell County in March 2013. (*Id.* at ¶ 1). Bull Mountain did not have a Class D certificate, but it was apparently under the impression its operation fell within an exemption provided by Mont. Code Ann. § 69-12-102(1)(c), for carriers servicing towns of less than 500 persons. (*Id.* at ¶ 2). Republic and Bayside became aware of Bull Mountain operating in Musselshell County. (*Id.* at ¶¶ 4-5). Republic's lawyer then issued a cease and desist letter to Bull Mountain on August 8, 2014, stating that Bull Mountain did not have a Class D certificate and did not fall within § 69-12-102's exemption. (Docs. 43-4 at 1; 48 at ¶ 6). Republic noted that only the town of Melstone qualified under the exemption, but it was "informed that Bull Mountain is operating well beyond the scope of the . . . exemption." (Doc. 43-4 at 1).

Republic thus demanded "Bull Mountain cease all garbage hauling in Musselshell County for residential customers outside . . . Melstone." (*Id.* at 2; Doc. 48 at ¶ 7). Republic also requested Bull Mountain acknowledge its intention to cease operations "so that Republic and Bull Mountain might work together to ensure a seamless transition for customers who may wish to retain garbage hauling services from an authorized Class D hauler . . . ." (Docs. 43-4 at 2; 48 at ¶ 8). In the event Bull Mountain failed to cease operations, Republic advised it would "be forced to exercise its administrative and/or judicial remedies . . . ." (Doc. 43-4 at 2).

Bull Mountain did not cease operations, and instead petitioned the Montana PSC on September 22, 2014 for a declaratory ruling to clarify the applicability of §69-12-102's exemption. (Doc. 43-6; 48 at ¶ 9). Republic, Montana Solid Waste Contractors Association, and a host of other interested parties opposed the petition. (Doc. 43-7 at ¶ 2).

Republic also filed a complaint for injunctive relief against Bull Mountain in Montana's Fourteenth Judicial District Court for Musselshell County on September 26, 2014. (Docs. 43-5; 48 at ¶ 10). Republic sought to enjoin Bull Mountain from operating in Musselshell County without a Class D certificate. (Docs. 43-5 at 4; 48 at ¶ 11).

The PSC ruled on Bull Mountain's petition on December 9, 2014, finding that § 69-12-102's exemption did not apply to Bull Mountain, except for its service

3

to the town of Melstone. (Docs. 43-7 at ¶ 8; 48 at ¶ 13). Bull Mountain then ceased operations and applied for a Class D certificate. (Docs. 43-8; 48 at ¶¶ 14-15). Bull Mountain's operations remained closed during the pendency of the application until May 12, 2015, when PSC issued a Class D certificate to Bull Mountain. (Docs. 43-10; 48 at ¶¶ 15, 18-19).

Less than a month later, on June 9, 2015, Republic and Bayside filed a petition for judicial review of the issuance of Bull Mountain's Class D certificate under the Montana Administrative Procedure Act ("MAPA"), Mont. Code Ann. § 2-4-702. (Docs. 43-11; 48 at ¶¶ 21-22). Republic and Bayside questioned whether the PSC erred in awarding Bull Mountain the certificate. (*Id.*). PSC was the named-Respondent, but Bull Mountain chose to intervene. (Docs. 43-11; 48 at ¶ 23). Bull Mountain did not file briefing in the matter, instead relying on the PSC's submissions. (Doc. 48 at ¶¶ 24-25). The court ultimately issued an order denying Republic and Bayside's petition for judicial review on August 15, 2018. (*Id.* at ¶ 28). Bull Mountain continued to operate during the pendency of the three-plus year action. (*Cf.* Docs. 48 at ¶¶ 30, 36 and 48-4 at ¶ 19).

Bull Mountain filed the instant action on September 6, 2018, alleging Defendants' actions caused a loss of business and inhibited the growth of business. (*See* Doc. 9). Specifically, Bull Mountain alleged claims for tortious interference with contract (Counts 1 and 4); abuse of process (Counts 2 and 5), and malicious

4

prosecution (Counts 3 and 6). The Court previously granted Defendants' motion for judgment on the pleadings as to Bull Mountain's malicious prosecution claims. (Doc. 24). Defendants now move the Court for summary judgment as to all remaining claims in the complaint. (Doc. 41).

## II. STANDARD OF REVIEW

### a. Objections to Findings and Recommendations

Parties are entitled to de novo review of those portions of Judge Cavan's findings and recommendations to which they timely and properly object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify, in whole or in part, those findings and recommendations properly objected to. 28 U.S.C. § 636(b)(1). "A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Lance v. Salmonson*, 2018 WL 4335526, at *1 (D. Mont. Sept. 11, 2018) (quoting *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010)). Simply restating the party's argument previously made before the magistrate judge is not a sufficient objection. *Id.*

Absent an objection, a court reviews a magistrate's findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114,

1121 (9th Cir. 2003). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

### b. Summary Judgment

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually

exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 486; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Plaintiff makes four objections to Judge Cavan's findings: (1) Judge Cavan erroneously concluded there were no facts presented which "warrant the inference that Defendants knowingly filed invalid claims;" (2) Judge Cavan erroneously

7

concluded there were no facts presented which "create an inference that the action(s) at issue were void or not a valid exercise of the Defendants' remedies;" (3) Judge Cavan erroneously concluded that there were no facts "to infer the Defendants had an ulterior motive in pursuing their claims;" and (4) Judge Cavan erroneously concluded that "Bull Mountain's claim does not include its losses in planned growth by reason of the costs incurred defending Defendants' claims." (Doc. 65 at 4).

However, for the first three of those four objections, Plaintiff presents nothing more than rephrased discussions of the arguments made before Judge Cavan. There are no citations to new legal authorities contradicting Judge Cavan's findings nor any nuanced references to the record from which the Court could "identify the issues and the reasons supporting a contrary result." *Lance*, 2018 WL 4335526, at *1. In short, Plaintiff attempts to use its first three objections as a vehicle to relitigate claims already found wanting. The Court finds that Plaintiff has failed to make proper objections and is not entitled to de novo review of those parts of Judge Cavan's Findings and Recommendations. *Id.* The Court further finds that Judge Cavan did not commit clear error and his findings are adopted.

Plaintiff's final objection relates to Judge Cavan's finding that Plaintiff's tortious interference with contract claim cannot include damages for future contracts. The Court finds Plaintiff sufficiently presented nuanced legal and factual

argument to constitute a proper objection and shall review the matter de novo. *Lance*, 2018 WL 4335526, at *1.

To prove a tortious interference with contract claim, a claimant must show that "the defendant's acts (1) were intentional and willful, (2) were calculated to cause damage to the plaintiff in his or her business, (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and (4) that actual damages and loss resulted." *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, 2006 WL 6843711, at *3 (D. Mont. 2006). The need for a contractual relationship is inherent within the claim. *Wingfield v. Dep't. of Public Health and Human* Services, 463 P.3d 452, 454 (Mont. 2020); *Bolz v.* Myers, 200 Mont. 286, 293-94 (Mont. 1982) ("[W]e recognized the rule that imposes upon strangers to a *contract* a duty not to interfere with its performance."(emphasis added)).

Judge Cavan found that while Plaintiff's business had numerous customers, Plaintiff used only informal, oral contracts to conduct its business. Because of this, Judge Cavan questioned whether Plaintiff could satisfy all elements of its tortious interference claim. However, even if the oral contracts satisfied the requirement, Judge Cavan determined that Plaintiff failed to raise a genuine issue of material fact regarding its interference claim. Plaintiff presented no facts demonstrating that Defendants' actions in filing legal claims were done for an unlawful purpose or

9

without right or justifiable cause. Instead, Judge Cavan found "the undisputed facts establish that after filing the first action for injunctive relief, Defendants did not take any action to acquire Bull Mountain's customers." (Doc. 64 at 15). Plaintiff also failed to raise a genuine issue of material fact that Defendants' actions caused damage to Plaintiff under its customer contracts. (*Id.*). Finally, Judge Cavan found Plaintiff's request for damages from future contracts meritless as those contracts did not yet exist in any form and could not satisfy the contract requirement of the tort. (*Id.* at 16).

Plaintiff's singular objection to Judge Cavan's findings on the tortious interference claim relates to the determination that Plaintiff could not seek damages for future contracts. Plaintiff asserts that it did not limit its complaint to existing contracts. Although Plaintiff entitled the section of the complaint as "Interference with Contract", Plaintiff claims all "parties understood that at issue were not only Bull Mountain's existing contracts but its future business as is apparent from the discovery served by the Defendant . . . ." (Doc. 65 at 14-15). Those discovery requests sought evidence on Plaintiff's ability to grow the business, the losses Plaintiff sustained from 2014 to the present, and Defendants' alleged attempts to drive Plaintiff out of business. Plaintiff asserts these requests put Defendants on notice "that what was at issue on the contract claim was not only the status of Bull Mountain's existing customer base . . . but the losses in

10

business incurred as a result of the loss of momentum caused by the Defendants' actions and the burden of legal bills it had incurred." (Doc. 65 at 15-16).

The Court finds this argument without merit. Plaintiff fails to cite any legal authority for its claim that discovery requests somehow broaden the scope of tort liability under a tortious interference with contract claim. Plaintiff provides a vague cite to *Bolz v. Myers* as support for the objection, but the Court is unable to find any supporting precedent for Plaintiff's theory in that case. A claimant has the burden to demonstrate the existence of a contractual relationship when pursuing a claim for tortious interference with contract. *See Lachenmaier v. First Bank Systems, Inc.*, 246 Mont. 26, 34 (Mont. 1990); *Wingfield*, 400 Mont. at 73 ("The key difference between [intentional interference with prospective economic advantage and tortious interference with contractual relations is that] intentional interference with prospective economic advantage 'does not require that a contract exist between any of the involved parties.'"). Thus, Judge Cavan was correct in finding that Plaintiff had to demonstrate a contractual relationship and that Plaintiff failed in this burden as future contracts do not impose a present obligation or duty.

However, even if the Court were to agree with Plaintiff on this objection, that would not save Plaintiff from summary judgment on their tortious interference with contract claim. Judge Cavan also found that Plaintiff did not satisfy its burden to present genuine issues of material fact that Defendants' actions were done with

11

an unlawful purpose and that those actions caused Plaintiff damages under its costumer contracts. Plaintiff did not object to these findings and is therefore not entitled to de novo review of the issues. The Court further does not find that Judge Cavan committed clear error in arriving at his conclusions.

In sum, the Court agrees with Judge Cavan's findings and recommendations that Plaintiff has failed to present genuine issue of material fact and Defendants are entitled to summary judgment on all remaining claims.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Judge Cavan's Findings and Recommendations (Doc. 64) are **ADOPTED IN FULL**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Doc. 41) is **GRANTED**.

As no claims remain, the Clerk of Court is directed to enter judgment in favor of Defendants and dismiss the case.

DATED this 9th day of February, 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge

12